WARNER, J.
Appellant challenges his consecutive life sentences imposed in three cases involving three separate criminal episodes. He claims that because he was nineteen at the time of the incidents, the life sentences are unconstitutional as cruel and unusual punishment. He also contends that the court had discretion to sentence him to less than life pursuant to the 10-20-Life statute, section 775.087(2)(d), Florida Statutes, and did not exercise that discretion. We sua sponte consolidate these cases for purposes of this opinion and conclude that both claims are meritless and affirm the sentences.
In circuit court case number 2009-CF-014593, (appellate case number 4D11-616, hereinafter “Case No. 616”), appellant was charged with two counts of aggravated assault with a firearm on two separate victims, one count of attempted first degree murder with a firearm, and one count of attempted robbery with a firearm, for incidents occurring on November 17, 2009. One victim suffered a gunshot wound to her left ear and back of her head. In circuit court case number 2010-CF-000318 (appellate court case 4D11-617, hereinafter “Case No. 617”), appellant was charged with two counts of robbery with a firearm, for an incident occurring on August 30, 2009. In circuit court case number 2010-CF-000501 (appellate court case 4D11-618, hereinafter “Case No. 618”), appellant was charged with two counts of robbery with a firearm, for an incident occurring on August 10, 2009. Appellant was nineteen years old at the time all of these crimes were committed.
Appellant entered pleas of guilty to all counts in all three cases and pleaded open to the court. He acknowledged that the maximum sentence for each incident was life in prison. After a full sentencing hearing, the court sentenced appellant in Case No. 616, on counts 1 and 2 (aggravated assault) to five years in prison, while on counts 3 and 4 (attempted murder and aggravated robbery), the court sentenced appellant to life with a twenty-five-year minimum mandatory. In Case No. 617, on both counts of robbery with a firearm, appellant was concurrently sentenced to life with a ten-year minimum mandatory. In Case No. 618, on both counts of robbery with a firearm, appellant was concurrently sentenced to life with a ten-year minimum mandatory. Within each case, appellant’s sentences were concurrent with each other; however, relative to the other cases, appellant’s sentences were consecutive to each other. Appellant’s counsel objected to the consecutive sentences. He now appeals the life sentences. Both issues he raises address the legality of his sentence, which we review de novo. See Jackson v. State, 925 So.2d 1168, 1169 n. 1 (Fla. 4th DCA 2006).
Appellant first argues that because the recent Supreme Court decision in Graham v. Florida, — U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), holding that life sentences for non-homicides categorically constituted cruel and unusual punishment for minors, did not limit the definition of “minor,” appellant’s three consecutive life sentences are grossly disproportionate to his non-homicide crimes, and are therefore unconstitutional, because he was nineteen years old when they were committed. This contention is completely refuted by Graham itself.
*1045 Prior to Graham, the Supreme Court had determined that imposition of the death penalty on a minor was unconstitutional as cruel and unusual punishment in violation of the Constitution. Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In creating this categorical ban on the death penalty for juvenile offenders, the Court noted the pitfalls of “[djrawing the line at 18 years of age,” but noted that “a line must be drawn,” and stated that “[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood.” Id. at 574. On this basis, the Court held that the age of eighteen is “the age at which the line for death eligibility ought to rest.” Id.
In Graham, the Supreme Court expanded the above rule to hold that while “[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime,” the state must give such a defendant “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” 130 S.Ct. at 2030. The Court noted that such a categorical rule “is necessary here.” Id. However, it again limited the application of the rule to juveniles, meaning persons less than eighteen years of age:
This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because “[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood,” those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.
Id. (quoting Roper, 543 U.S. at 574, 125 S.Ct. 1183, 161 L.Ed.2d 1) (emphasis added). Contrary to appellant’s argument on appeal that “[t]he Graham Court does not define with specificity the definition of minor,” the Court explicitly applied the same bright-line rule from Roper to life without parole sentences for non-homicide cases for minors.
Appellant claims that the life sentences for non-homicide crimes are grossly disproportionate to the crimes to which he pled. We disagree. Proportionality analysis is objective and guided by “(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.” Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).[1] Here, the victim of the attempted murder suffered from a brain injury and is permanently disabled, according to her testimony at sentencing. Further, in the span of three months, appellant was involved in three separate criminal episodes, all of which were of a violent nature. See Bloodworth v. State, 504 So.2d 495, 498 (Fla. 1st DCA 1987) (“It is apparent from a reading of the Solem opinion that the all-important factor which led the majority to find an Eighth Amendment violation was the fact that the offense for which the defendant was convicted ... was characterized by the Court as a ‘nonviolent felony.’ ”). The First District recently interpreted Blood-worth to stand for the premise that “Solem does not apply in cases involving prior violent felonies.” Andrews v. State, 82 So.3d 979, 986 (Fla. 1st DCA 2011). Based *1046 on the violent nature of appellant’s crimes, his life sentences do not offend the Constitution as “disproportionate.” See also Adaway v. State, 902 So.2d 746, 750 (Fla.2005) (reiterating that the sentence length is generally a matter delegated to the legislature to determine the penalty for the gravity of the crime).
Appellant also argues that the trial court erred in concluding that section 775.087 required appellant’s sentences in each case to be consecutive to each other, maintaining that the trial court has the discretion to run the sentences in each case concurrent with the other cases. We agree with the state that appellant was correctly sentenced based on the Florida Supreme Court’s interpretation of the plain language of section 775.087(2)(d), Florida Statutes (2010), in State v. Sousa, 903 So.2d 923 (Fla.2005).
Section 775.087, Florida Statutes, the “10-20-Life” penalty provision for the possession and use of firearms during the commission of crimes, provides:
It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.
§ 775.087(2)(d), Fla. Stat. (emphasis added). As it applies to appellant, convictions of attempted murder, robbery, and aggravated assault, when during the commission of such an offense appellant possessed a firearm or discharged a firearm causing great bodily harm, require the court to impose a minimum mandatory of ten years in prison and twenty-five years in prison, respectively. § 775.087(2)(a), Fla. Stat.
Appellant also claims that the term “any other felony offense” refers to any other non-10-20-Life felony offense. Thus, because appellant’s offenses were 10-20-Life felonies, he argues, the court could use its discretion to run those sentences concurrently. The plain language of the statute does not allow for the qualification suggested by appellant. Appellant’s contention is also refuted by Sousa, 903 So.2d 923, in which the supreme court held that the statute required consecutive sentences for 10-20-Life qualifying crimes committed during a shooting spree against several victims within a single criminal episode. Sousa held that 10-20-Life sentences involving multiple victims must be served consecutively to each other, in accordance with the statutory mandate. Sous a thus applies the statute as written by the Legislature to mandate sentencing for a 10-20-Life offense consecutive to any other felony offense, whether that “other felony offense” is a 10-20-Life offense itself or non-10-20-Life felony.
As noted in Sousa, “[t]he fundamental rule of construction in determining legislative intent is to first give effect to the plain and ordinary meaning of the language used by the Legislature.” Id. at 928. Here, the plain and ordinary meaning leads to no other conclusion but that the sentences for each of the 10-20-Life crimes committed by the appellant must be imposed consecutively to each other. The trial court correctly determined the issue, and we affirm.
STEVENSON and TAYLOR, JJ., concur.

. Solem is the "first and only case in which the Supreme Court has invalidated a prison sentence because of its length.” Adaway v. State, 902 So.2d 746, 749 (Fla.2005).