NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RICHARD DELGADO CRUZ,              )
                                   )
            Appellant,             )
                                   )
v.                                 )     Case No. 2D17-4284
                                   )
STATE OF FLORIDA,                  )
                                   )
            Appellee.              )
_____)

Opinion filed December 28, 2018.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for Polk
County; Wayne M. Durden, Judge.

Richard Delgado Cruz, pro se.

No appearance for appellee.


CASANUEVA, Judge


         Richard Delgado Cruz timely appeals a final order summarily denying his

motion for postconviction relief, which he filed under Florida Rule of Criminal Procedure

3.850. We affirm the postconviction court's order to the extent it denies relief on

grounds one and three of the motion without further discussion. We reverse the denial

of relief on ground two and remand for further proceedings.

## I. Procedural and Historical Background

Mr. Cruz was convicted of burglary of a dwelling with assault or battery while in actual possession of a firearm, robbery with a firearm while in actual possession of a firearm, three counts of kidnapping to facilitate a felony, and three counts of sexual battery with a firearm while in actual possession of a firearm following a jury trial. Ultimately, Mr. Cruz received eight consecutive life sentences for his offenses, with mandatory minimum ten-year terms imposed on each of the offenses for which he actually possessed a firearm, to run concurrently. We affirmed Mr. Cruz's appeal from his judgment and sentences.[1]  Cruz v. State, 160 So. 3d 422 (Fla. 2d DCA 2014). Thereafter, he filed the instant motion for postconviction relief.

## II. Standard of Review and Burden of Proof

"When reviewing the summary denial of a motion for postconviction relief, this court applies de novo review and 'must accept the movant's factual allegations as true to the extent that they are not refuted by the record.' "  Martin v. State, 205 So. 3d 811, 812 (Fla. 2d DCA 2016) (quoting Jennings v. State, 123 So. 3d 1101, 1121 (Fla. 2013)). "[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally

---

[1]We granted, in part, Mr. Cruz's petition alleging ineffective assistance of appellate counsel due to counsel's failure to file a motion to correct the mandatory minimum sentences, which had been improperly imposed to run consecutively. Cruz v. State, 194 So. 3d 574, 574 (Fla. 2d DCA 2016). We reversed Mr. Cruz's sentences for the offenses for which he actually possessed a firearm and remanded for the trial court to resentence him in accordance with our opinion. Id. at 575-76.

insufficient." Freeman v. State, 761 So. 2d 1055, 1061 (Fla. 2000); see also Fla. R. Crim. P. 3.850(f).

The purpose of the constitutional requirement of effective assistance of counsel is to ensure a fair trial. Strickland v. Washington, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. To plead a facially sufficient claim for ineffective assistance of trial counsel, a defendant must plead sufficient facts to establish that his trial counsel's performance was deficient and that he was prejudiced thereby. Martin, 205 So. 3d at 812 (citing Strickland, 466 U.S. at 694). With respect to the deficiency prong, a defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. With respect to the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a claim fails on either the deficiency or prejudice prong, the postconviction court can deny the claim. Id. at 687.

### III.  Ground Two of the Motion and the Postconviction Court's Ruling

In ground two of his motion, Mr. Cruz alleged that his trial counsel was ineffective for failing to timely and adequately object when the State's DNA expert, Robyn Ragsdale, testified regarding the statistical analysis of a DNA match for a profile she developed from evidence taken from the crime scene. He alleged that at trial, the

DNA evidence was the primary basis for identifying him as one of the perpetrators of the offenses. Mr. Cruz pointed out that his counsel objected to Ms. Ragsdale's testimony about the statistical component prematurely, before the State qualified her and laid the predicate for the admission of that testimony, and the trial court overruled the objection. Thereafter, he alleged, the State failed to elicit testimony from Ms. Ragsdale to demonstrate that she was qualified to testify about the statistical component of the DNA testing or to lay the predicate for the admission of her testimony about her statistical analysis. More specifically, the State never elicited testimony from Ms. Ragsdale to demonstrate that she had sufficient knowledge of the DNA database or what formula was used to perform the statistical analysis.

Mr. Cruz asserted that had defense counsel made a timely and adequate objection, the court would have required the State to establish the proper predicate for the admission of her testimony. If it could not do so, he alleged, the trial court would have precluded Ms. Ragsdale from testifying about the statistical component of the DNA match and the outcome of the trial would have been different. Citing to Perdomo v. State, 829 So. 2d 280 (Fla. 3d DCA 2002), Mr. Cruz requested an evidentiary hearing to determine whether the proper predicate could be laid for Ms. Ragsdale's testimony about the statistical analysis. Thereafter, the postconviction court could determine whether his convictions should stand or whether he was entitled to a new trial.[2]

_____

[2]Mr. Cruz's proposed relief is based upon a line of cases addressing the trial court's improper admission of testimony on the statistical component of DNA evidence on direct appeal. See Brim v. State, 695 So. 2d 268, 275 (Fla. 1997); Casias v. State, 94 So. 3d 611, 616 (Fla. 2d DCA 2011); Perdomo, 829 So. 2d at 284. In this appeal from an order summarily denying Mr. Cruz's motion for postconviction relief, however, we are limited to determining whether the record attachments to the

The postconviction court denied relief on ground two, observing that when Ms. Ragsdale began to testify about the statistical component of the DNA analysis, trial counsel made an objection that Ms. Ragsdale was not an expert in statistical analysis and the objection was overruled. Thereafter, "Ms. Ragsdale went on to explain that statistical analysis is commonly done and that she has been conducting such analysis since 1996." The postconviction court found that a subsequent objection along the same lines would not likely have been successful. Thus, it concluded that Mr. Cruz failed to demonstrate deficient performance or prejudice.

The postconviction court's legal conclusion that the foregoing testimony was sufficient to establish the admissibility of Ms. Ragsdale's testimony about the statistical analysis of the DNA profile she developed is incorrect and fails to refute Mr. Cruz's claim that his counsel's performance was deficient. In addition, the record does not conclusively refute Mr. Cruz's claim of prejudice, in that as a result of his trial counsel's failure to properly object, the State never established the proper predicate for the admission of the primary evidence used to obtain his conviction, thereby undermining confidence that Mr. Cruz received a fair trial with a just and reliable outcome.

## IV. The Requisite Foundation for Admitting DNA Evidence

In Florida, DNA testing is a two-step process that includes a biochemical component and a statistical component. Butler v. State, 842 So. 2d 817, 827 (Fla.

---

postconviction court's order conclusively refute Mr. Cruz's claim of ineffective assistance of trial counsel and, if not, directing the postconviction court to conduct further proceedings to resolve Mr. Cruz's motion on remand. See Fla. R. App. P. 9.141(b)(2)(D).

2003).  A biochemical analysis is employed to determine whether two DNA samples look alike, then a statistical analysis is employed to determine the frequency of that profile in the population.  Id. at 827-28 (citing Brim v. State, 695 So. 2d 268 (Fla. 1997)).  Simply establishing that two patterns match without offering any scientifically valid estimate of the frequency with which such matches might occur by chance in the population is meaningless.  Brim, 695 So. 2d at 270.  Because a juror's understanding about how unusual a DNA profile is could be wrong, testimony about DNA analysis must go beyond a simple statement of the occurrence of a match and must provide the trier of fact with expert guidance about its probative value.  Id.

In order for testimony about the statistical component of DNA to be admitted, the judge must determine that the witness is qualified to present the testimony.  Murray v. State, 692 So. 2d 157, 164 (Fla. 1997) (citing Ramirez v. State, 651 So. 2d 1164, 1167 (Fla. 1995)).  Although a witness need not be a statistician or a mathematician to testify about the statistical significance of a DNA match, Perdomo, 829 So. 2d at 283, the witness must demonstrate "a sufficient knowledge of the [population] database grounded in the study of authoritative sources," Butler, 842 So. 2d at 828 (quoting Murray, 692 So. 2d at 164).  In addition, the witness must identify the method used to calculate the frequency statistics so that the judge may determine whether the method used is generally accepted in the scientific community in accordance with Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).[3]  Butler, 842 So.

_____

[3]Although the legislature amended sections 90.702 and 90.704, Florida Statutes (2013), to replace the Frye test with the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Florida Supreme Court recently held that those amendments were unconstitutional.  DeLisle v. Crane Co., No. SC16-

2d at 827-28; <u>Murray</u>, 692 So. 2d at 161-62; <u>Brim</u>, 695 So. 2d at 271-72. It is the burden of the proponent of the evidence to establish that the witness is qualified to report the frequency statistics and that frequency statistics satisfy the requirements of <u>Frye</u>. <u>Murray</u>, 692 So. 2d at 161, 164.

### V. Counsel's Objection to the Statistical Evidence in this Case

The record attachments to the postconviction court's order reflect that when Ms. Ragsdale began to testify about her statistical analysis, counsel objected because the State had "not established through the testimony that she's an expert in statistical analysis." That objection was not entirely accurate because a witness need not be a statistician or mathematician to testify about the statistical significance of a DNA match. <u>Perdomo</u>, 829 So. 2d at 283. The trial court overruled the objection. Ms. Ragsdale proceeded to testify that she was "familiar with the type of statistical analysis," that it was "something that is commonly done" in her profession, that she had been "performing statistical analysis . . . since 1996," and that it is "part and parcel of what" she does. Thereafter, Ms. Ragsdale provided the statistical data for the DNA profiles that she developed in the case without further objection.

Although the record attachments to the postconviction court's order reflect that Ms. Ragsdale stated that statistical analysis is commonly done and that she has been performing such analyses since 1996, this was insufficient to lay the proper predicate for her testimony about her statistical analysis. Nothing in the attachments to the postconviction court's order demonstrates that Ms. Ragsdale testified about her

2182, 2018 WL 5075302 (Fla. Oct. 15, 2018).

knowledge of the population database from which the statistics were generated or that she identified the method she used to perform the statistical analysis.  See Murray, 692 So. 2d at 163 (holding that as the proponent of DNA evidence admitted at trial, the State failed to carry its burden of establishing the admissibility of probability calculations for a DNA profile developed from the crime scene when its expert had no knowledge about the database used to calculate the frequency statistics about which he testified); Casias v. State, 94 So. 3d 611, 613-15 (Fla. 2d DCA 2011) (holding that the admission of testimony about the statistical analysis of a DNA match was erroneous when the expert failed to identify the statistical method used and the trial court was unable to determine whether that method was generally accepted); Gibson v. State, 915 So. 2d 199, 202 (Fla. 4th DCA 2005) (holding that a witness was not qualified to testify about the statistical component of a DNA match when she failed to identify the formula used or any knowledge of the authorities pertinent to the population database); Perdomo, 829 So. 2d at 283-84 (holding that a witness was not qualified to testify about the statistical component when he did not sufficiently describe his education and experience in such analysis or the database, the methodology used, or that the methodology was generally accepted); Miles v. State, 694 So. 2d 151, 152-53 (Fla. 4th DCA 1997) (holding that statistical DNA evidence was not properly admitted when the trial court did not determine that the statistical methodology employed was generally accepted, there was no testimony about what statistical technique was applied, and there was no testimony about the State's expert's qualifications to report population frequency statistics based upon sufficient knowledge of the database).

If counsel had adequately objected, then the State would have been

required to establish that Ms. Ragsdale had sufficient knowledge of the population database used in the statistical analysis and the method used to calculate the frequency statistics. If the State was unable to demonstrate Ms. Ragsdale's knowledge of the population database or if the formula used in the statistical calculation was not generally accepted, the evidence that allegedly served to identify Mr. Cruz as a perpetrator of the offenses would have been excluded. The record attachments to the postconviction court's order do not refute Mr. Cruz's allegations that his trial counsel was deficient for failing to adequately object to Ms. Ragsdale's testimony about the statistical component of the DNA evidence or that he was prejudiced because the primary evidence identifying him as one of the perpetrators of the offenses was improperly admitted.

Mr. Cruz alleged sufficient facts to establish that his trial counsel was deficient for failing to make an adequate objection to Ms. Ragsdale's testimony about the statistical component of the DNA evidence and that he was prejudiced by counsel's deficient performance, thereby stating a facially sufficient claim for postconviction relief in ground two. Because his claim was not conclusively refuted by the record attachments to the postconviction court's order, we reverse the summary denial of relief on ground two and remand for further proceedings.

### VI. Conclusion

We affirm the postconviction court's order to the extent that it summarily denied relief on grounds one and three. Because Mr. Cruz stated a facially sufficient claim for relief in ground two that is not conclusively refuted by the record attachments to the postconviction court's order, we reverse the summary denial of that ground and remand for further proceedings. The postconviction court may again deny relief if it can

attach record evidence that conclusively refutes the claim.  Fla. R. Crim. P. 3.850(f).

Otherwise, it must order the State to respond to the claim and hold an evidentiary

hearing if necessary.  Id.

Affirmed in part; reversed in part; remanded.


KELLY and CRENSHAW, JJ., Concur.